UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

D'ANDRE WHITE,

           Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

           Defendants.
_____/

Case No. 1:22-cv-721

Honorable Sally J. Berens

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.6.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is

fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]however, because they had not been served, they were not parties to the action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant MDOC. The Court will also dismiss, for failure to state a claim, the following claims: (1) Plaintiff's Fifth Amendment claims; (2) Plaintiff's Section 1983 defamation claim against Defendant Doane; and (3) Plaintiff's Fourteenth Amendment procedural due process claim against Defendant Doane. The following claims remain in the case: (1) Plaintiff's Sixth Amendment claim premised upon interference with the right to counsel against Defendant Doane; (2) Plaintiff's Eighth Amendment excessive force claims against Defendants Rikker and Doane; and (3) Plaintiff's Eighth Amendment denial of medical care claim against Defendant Hugge.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. Feb. 10, 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

**Discussion**

**I.      Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the MDOC itself and the following ICF personnel: Correctional Officers T. Rikker and A. Doane, and Medical Provider Unknown Hugge.

Plaintiff alleges that on March 17, 2022, Defendants Rikker and Doane transported him to a scheduled court appearance at the 12th District Court in Jackson, Michigan.[2] (ECF No. 1, PageID.3.) After a nearly two-hour drive, Plaintiff asked to use the bathroom upon arriving at the courthouse. (*Id.*) He was taken to the bathroom designated for prisoners. (*Id.*) Plaintiff asked Defendants Rikker and Doane to remove one handcuff so that he could clean himself after defecating. (*Id.*) Defendant Rikker responded, "I don't give a f*** if you wipe your ass or not, you can walk around sh**ty all day for all I care." (*Id.*)

Plaintiff asked to speak to his attorney about this treatment. (*Id.*) In response, Defendant Rikker told him that he had forfeited his bathroom break and to "get the f*** out." (*Id.*) Plaintiff asked why he was being treated with hostility, and Defendant Rikker continued to raise his voice, "drawing the attention of the Jackson County deputies." (*Id.*) Defendant Rikker then grabbed Plaintiff by the throat and threw him to the ground, "kicking [him] repeatedly." (*Id.*) Plaintiff "cowered in the corner refusing to leave or move without [his] attorney present." (*Id.*) Defendants Rikker and Doane, along with the Jackson County deputies (not parties), dragged Plaintiff by his

---

[2] Online court records indicate that Plaintiff has been charged with assault of a prison employee in Jackson County, and that he appeared before the Jackson County District Court for proceedings related to that charge on March 17, 2022. *See State v. White*, No. 2200300FY (Jackson Cnty. Dist. Ct.), https://micourt.courts.michigan.gov/CaseSearch/Court/D12 (search "DAndre White") (last accessed Aug. 15, 2022).

arms and legs from the bathroom to the holding cell. (*Id.*) Plaintiff's attorney, Kareem Johnson (not a party) then came to speak to him. (*Id.*, PageID.4.) Plaintiff contends that while counsel was trying to speak to him, Defendant Doane and the deputies "refused to allow [him] to answer [his] counsel's questions by interjecting answers of their own." (*Id.*)

Upon arriving back at ICF, Plaintiff told the on-shift nurse (not a party) that he was in "insufferable amounts of pain." (*Id.*) The on-shift lieutenant (not a party) took pictures of Plaintiff's injuries and wrote an incident report. (*Id.*) Plaintiff was subsequently transported to Sparrow Hospital in Ionia, Michigan, where he had x-rays taken. (*Id.*) The attending physician (not a party) "made a request for follow up care within one week due to inflammation and bruising." (*Id.*) Plaintiff claims, however, that Defendant Hugge did not see him until 12 days had passed, at which time Defendant Hugge "refused to acknowledge or treat the injuries sustained." (*Id.*) Plaintiff avers that Defendant Hugge "attempted to tell [him] that the pain is a result of a 20 year old injury." (*Id.*) He "refused to acknowledge what two registered nurses on his medical team had already acknowledged." (*Id.*) Plaintiff contends that these nurses "both agreed that [his] clavic[le] bone was protruding from [his] shoulder in what seemed to be an unusual manner." (*Id.*, PageID.5.)

Plaintiff alleges further that Defendant Doane caused distress "through means of defamation of character by means of blatant lies and misconducts." (*Id.*) According to Plaintiff, Defendant Doane wrote in an Incident Participant Report that Plaintiff was kicking out toward Defendant Rikker while he attempted to help Plaintiff to his feet. (*Id.*) Defendant Rikker, however, stated in his own report that "he and two court security officers grabbed [Plaintiff's] arms [and] legs and proceeded to carry [him] to a holding cell without further incident." (*Id.*)

5

Based upon the foregoing, Plaintiff asserts violations of his Fifth, Sixth, and Eighth Amendment rights. (ECF No. 6.) A liberal construction of his complaint leads the Court to believe that he is also asserting Fourteenth Amendment violations. Plaintiff also contends that Defendant Hugge engaged in medical malpractice. (*Id.*) Plaintiff seeks declaratory and injunctive relief, as well as compensatory damages. (*Id.*)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Defendant MDOC

As noted above, Plaintiff has named the MDOC as a Defendant in this action. Section 1983 expressly requires that a named defendant be a "person." *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). But neither the State of Michigan nor the MDOC is a "person" within the meaning of Section 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989) (holding a state is not a "person"); *Parker v. Mich. Dep't of Corr.*, 65 F. App'x 922, 923 (6th Cir. 2003) (citing *Will* and holding that the MDOC is not a "person.").

Moreover, even if the MDOC or the State of Michigan were "persons" under Section 1983, Plaintiff's claim would be properly dismissed because the MDOC and the State of Michigan are immune from suit under the Eleventh Amendment. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In

7

numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a Section 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

For these reasons, Plaintiff's claims against the MDOC are properly dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), and 42 U.S.C. § 1997e(c). Accordingly, the Court will dismiss the MDOC from this action.

### B. Fifth Amendment Claims

Plaintiff contends that Defendants violated his Fifth Amendment rights. (ECF No. 1, PageID.6.) Presumably, Plaintiff is referencing the Fifth Amendment's due process clause. The Fifth Amendment, however, applies only to claims against federal employees. Here, Plaintiff has sued employees of the State of Michigan. Plaintiff, therefore, cannot maintain his Fifth Amendment claims, and those claims will be dismissed. *See Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000) (noting that "[t]he Fourteenth Amendment's Due Process Clause restricts the activities of the states and their instrumentalities; whereas the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government").

### C. Sixth Amendment Claims

Plaintiff contends that Defendant Doane violated his Sixth Amendment rights by interfering with his ability to communicate with counsel. (ECF No. 1, PageID.4, 6.) The Sixth Amendment states:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with his witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const. amend. VI. "A criminal defendant's ability to communicate candidly and confidentially with his lawyer is essential to his defense. In American criminal law, the right to privately confer with counsel is nearly sacrosanct." *Nordstrom v. Ryan*, 762 F.3d 903, 910 (9th Cir. 2014) (citation omitted). A criminal defendant "does not enjoy the effective aid of counsel if he is denied the right of private consultation with him." *Id.* (quoting *Coplon v. United States*, 191 F.2d 749, 757 (D.C. Cir. 1951); *Mastrian v. McManus*, 554 F.2d 813, 821 (8th Cir. 1977)).

"In order to state a § 1983 cognizable claim for deprivation of right to counsel, there must be some allegation indicating an interference with the prisoner's relationship with counsel." *Stanley v. Vining*, 602 F.3d 767, 770 (6th Cir. 2010). Here, Plaintiff avers that when counsel came to speak to him, Defendant Doane refused to allow Plaintiff to answer counsel's questions "by interjecting answers of their own." (ECF No. 1, PageID.4.) Plaintiff also contends that Defendant Doane refused to allow Plaintiff to speak to his attorney outside of the presence of officers. (*Id.*) Reading Plaintiff's allegations indulgently at this stage of the proceedings, it appears Plaintiff has sufficiently pled a Sixth Amendment claim against Defendant Doane.

### D.  **Eighth Amendment Claims**

#### 1.  **Excessive Force**

Plaintiff contends that Defendants Rikker and Doane used excessive force against him on March 17, 2022, during his scheduled court appearance in Jackson County. (ECF No. 1, PageID.3.)

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "'involve the unnecessary and wanton infliction of pain.'" *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153,

9

183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "'totally without penological justification.'" *Id.*

But not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (holding that "[n]ot every push or shove . . . violates a prisoner's constitutional rights") (internal quotations omitted). On occasion, "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)), *quoted in Cordell v. McKinney*, 759 F.3d 573, 580–81 (6th Cir. 2014). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to an Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. We ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9 (internal quotations omitted). The objective component requires a "contextual" investigation, one that is "responsive

10

to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

Here, Plaintiff contends that Defendant Rikker grabbed him by his throat and threw him to the ground, kicking him repeatedly. (ECF No. 1, PageID.3.) Plaintiff "cowered in the corner refusing to leave or more without [his] attorney present." (*Id.*) He avers further that Defendants Rikker and Doane, along with the Jackson County deputies, dragged him by his arms and legs across the floor from the bathroom to the holding cell at the courthouse. (*Id.*) Given these allegations, Plaintiff has sufficiently stated Eighth Amendment excessive force claims against Defendants Rikker and Doane.

### 2.     **Denial of Medical Care**

Plaintiff next avers that Defendant Hugge violated his constitutional rights by refusing to provide follow-up medical care for his injuries and bruises he sustained because of the use of excessive force by Defendants Rikker and Doane. (ECF No. 1, PageID.4.)

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the

treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014). This is so even if the misdiagnosis results in an inadequate course of treatment and

13

considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

Here, Plaintiff contends that when he was seen by Defendant Hugge, Defendant Hugge "refused to acknowledge or treat the injuries sustained as a direct result of the brutal assault on March 17, 2022." (ECF No. 1, PageID.4) Instead, Defendant Hugge told Plaintiff that he was experiencing pain from a 20-year-old injury. (*Id.*) Plaintiff avers that Defendant Hugge refused to acknowledge that two registered nurses in the healthcare department had indicated that Plaintiff's "clavic[le] bone was protruding from [his] shoulder in what seemed to be an unusual manner." (*Id.*, PageID.4–5.) Although Plaintiff has by no means proven deliberate indifference, at this stage of the proceedings, taking Plaintiff's allegations as true and in the light most favorable to him, Plaintiff's Eighth Amendment claim premised upon denial of medical care against Defendant Hugge may not be dismissed on initial review.

### E.  Section 1983 Defamation Claims

Plaintiff alleges that Defendant Doane caused distress "through means of defamation of character by means of blatant lies and misconducts." (ECF No. 1, PageID.5.) A plaintiff asserting a Section 1983 defamation claim must, in addition to proving the elements of a defamation claim, show "[s]ome alteration of a right or status 'previously recognized by state law,' such as employment." *Quinn v. Shirey*, 293 F.3d 315, 319 (6th Cir. 2002) (quoting *Paul v. Davis*, 424 U.S. 693, 711–12 (1976)). Plaintiff's complaint is completely devoid of facts suggesting that Defendant Doane's alleged defamatory statements led to the alteration of any right or status conferred upon Plaintiff by state law. The Court, therefore, will dismiss Plaintiff's Section 1983 defamation claim against Defendant Doane. *See Marshall v. Richardson*, No. 1:19-cv-45, 2019 WL 478501, at *3 (W.D. Mich. Feb. 7, 2019) ("There is no federal or constitutional protection against statements that harm a person's reputation.").

**F.     Fourteenth Amendment Claims**

Plaintiff's suggestion that Defendant Doane caused distress "by means of blatant lies and misconducts" leads the Court to liberally construe Plaintiff's complaint as asserting a Fourteenth Amendment procedural due process claim against Defendant Doane. A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995).

Plaintiff does not allege that any misconduct convictions received because of the March 17, 2022, incident had any effect on the duration of his sentence—and he cannot. Plaintiff is serving sentences imposed during 2019 and 2020 for crimes committed during 2018 and 2019.[3] For a prisoner like Plaintiff, who is serving a sentence for an offense committed after 2000, even a major misconduct conviction results only in the accumulation of "disciplinary time." Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011). Thus, any misconduct conviction had no impact on the duration of Plaintiff's sentence.

Plaintiff also has not alleged that he suffered an "atypical and significant" deprivation. *Sandin*, 515 U.S. at 486–87. Indeed, in this action, Plaintiff does not provide any allegations

---

[3] *See* MDOC Offender Tracking Information System (OTIS), https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=591002 (last visited Aug. 16, 2022).

regarding the sanctions he received. Plaintiff, therefore, has failed to show that any sanction received was an "atypical" and "significant deprivation." *Id.* Likewise, to the extent Plaintiff was placed in segregation, his placement therein does not constitute an "atypical and significant" deprivation. *Id.* at 484. In *Sandin*, the United States Supreme Court concluded that placement in segregation for 30 days did not impose an atypical and significant hardship. *Id.* Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that 61 days in segregation is not atypical and significant). Instead, generally only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g., Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (concluding that thirteen years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (finding that eight years of segregation implicates a liberty interest); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicated a liberty interest).

For the foregoing reasons, Plaintiff fails to state a Fourteenth Amendment procedural due process claim against Defendant Doane. That claim will, therefore, be dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendant MDOC will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims: (1) Plaintiff's Fifth Amendment claims; (2) Plaintiff's Section 1983 defamation claim against Defendant Doane; and (3) Plaintiff's Fourteenth Amendment procedural due process claim against Defendant Doane. The following claims remain in the case:

(1) Plaintiff's Sixth Amendment claim premised upon interference with the right to counsel against Defendant Doane; (2) Plaintiff's Eighth Amendment excessive force claims against Defendants Rikker and Doane; and (3) Plaintiff's Eighth Amendment denial of medical care claim against Defendant Hugge.

An order consistent with this opinion will be entered.

Dated:  August 23, 2022                         /s/ Sally J. Berens
                                                Sally J. Berens
                                                United States Magistrate Judge